## Burke *versus* Mock.

1. Mock proposing to take up vacant land designated three sides; at the fourth Helzel claimed as his improvement to a line then shown to Mock; Mock said he would join Helzel and take the balance after Helzel's survey should be made; Shoup made an improvement on part of the land then claimed by Helzel. Afterwards Helzel had a survey made excluding Shoup's improvement. Mock then had a survey made adjoining Helzel's *survey*, and including Shoup's improvement. *Held*, that Mock acquired no title to that improvement.

2. An intention of Mock to claim, and an agreement with Helzel that he should have to the line to which he might limit his survey, would not give title to Mock against an actual settler, for land thrown out by Helzel.

May 12th 1868. Before THOMPSON, C. J., STRONG, AGNEW and SHARSWOOD, JJ. READ, J., absent.

Error to the Court of Common Pleas of *Bedford county:* Of May Term 1868, No. 30.

This was an action of trespass q. c. f., by Paul S. Mock against Josiah Burk, commenced October 7th 1865.

The defendant pleaded not guilty and liberum tenementum.

Each party claimed *locum in quo* as an improver of it as vacant land.

The plaintiff's evidence was that before harvest in 1860, he was intending to take up some land alleged to be vacant in Union township, Bedford county, was shown three undoubted lines of the vacancy. At the end of one of the lines plaintiff met Joseph Helzel, who said he would claim to marks which he showed on the fourth side, as he had the oldest improvement. Plaintiff said he would not interfere with Helzel, but would join his line, told Helzel to have his survey made, and he, plaintiff, would take the balance of the vacancy after Helzel got his quantity. No one else was claiming the land but the plaintiff and Helzel—plaintiff on one end and Helzel on the other. In 1864 Ketterman, the

county surveyor, made a survey for Helzel; up to that time Helzel had claimed the land in dispute, but then excluded it because he thought Shoenberger had a better title.    Ketterman afterwards made a survey for Mock and took in all the land to the line which he had surveyed for Helzel.    Until after Ketterman's survey Mock did not claim to go beyond the line designated in 1860 as Helzel's.

The defendant's evidence was that on the last day of April of 1860, David H. Shoup began to cut wood on the land in dispute, built a house, went into it in May, and marked his boundary in May 1861.    He lived in it until he went into the service of the United States, which was in August 1861.    He went with the intention to return to his improvement; locked his house, leaving in it some furniture.    He cleared two acres and left the improvement in the care of his father.    He was in the service four years; when he returned his house was torn down.    September 8th 1861, he conveyed the improvement to the defendant who cut logs and built a house on the disputed land.    The defendant gave evidence that on several occasions after Shoup went on to the land, the plaintiff told him that they should not let themselves be scared off by the furnace men who had claimed the land.

The defendant's points are found in the charge of the court given below.

The following are the portions of the charge of King, P. J., which were assigned for error:—

"It is contended that the plaintiff is estopped by his declarations, as proved by David H. Shoup and his brother William. The first of these witnesses states that the plaintiff on a certain occasion told him and his brothers, speaking of the Shoup improvement, to stick to it, and not let themselves be scared out by the *furnacers.*    The other states that the plaintiff told him a number of times that "we should not let ourselves be scared out by the furnace men."    If you believe this evidence, it is entitled to consideration in settling the question of fact arising in this cause; but these declarations do not, of themselves, amount to an estoppel.

"We have been requested by the counsel for the defendant to instruct the jury: That if they believe that, after harvest 1860, Mock and Joseph Helzel agreed that they would adjoin each other, or adopt a common line of division, the land remained in possession of Helzel, Mock thereby acquired no title under such agreement.

"In reply to this proposition, we say we can discover no impropriety in two improved or contiguous vacant landowners, agreeing that the younger improver should extend his line to that of the older, and that before fixing his boundary he should wait until his neighbor had established his line.    If Helzel claimed to a line beyond that at which he subsequently fixed his boundary, his

possession in the interim would not prevent Mock from going up to the line ultimately fixed by Helzel.

"We are also requested to instruct you, that if you believe that Mock did not take possession of the land in dispute, until the date of the Ketterman survey, he cannot recover, no matter whether the Shoup improvement was commenced in the spring of 1860 or 1861.

"This point has already been substantially answered in our reply to the 1st point, and in our general charge. If there is anything else in this proposition, that has not been met, it is, in our opinion, outside of the case."

The verdict was for the plaintiff for $1.50, and the defendant took a writ of error.

*J. Cessna*, for plaintiff in error, cited, on the question of estoppel: Beaupland *v.* McKeen, 4 Casey 124; Hill *v.* Epley, 7 Id. 331; Wood *v.* Wilson, 1 Wright 384. On the other errors, although discussed, he made no citations.

*G. N. Spang* and *S. L. Russell*, for defendant in error, cited, as to estoppel: Patterson *v.* Lytle, 1 Jones 53; Hepburn *v.* McDowell, 17 S. & R. 383; Knouff *v.* Thompson, 4 Harris 361; Hill *v.* Epley, Wood *v.* Wilson, *supra.* As to the other errors: Healy *v.* Moul, 5 S. & R. 181; Dixon *v.* Crist, 17 Id. 54; Martz *v.* Hartley, 4 Watts 261; Syphers *v.* Meighen, 10 Harris 125.

The opinion of the court was delivered, May 20th 1868, by

THOMPSON, C. J.—That which seems to have engaged the attention of the litigants in this case most, appears to us, in the view we take of the controversy, not to be of much importance, viz., the date of the commencement of Shoup's improvement. Whether it was the last of April 1860, or in the spring of 1861, was of little consequence, if at one or the other date he entered, in the language of the 3d section of the Act of 30th December 1786, "with a manifest intention of making it a place of abode, and the means of supporting a family." The purpose of the entry was not a matter in dispute below. Indeed this was sufficiently evinced by the acts done on the ground; putting up a cabin fit for the habitation of man, clearing, fencing, planting and sowing grain, and residing in the cabin until entering the military service of the country; which latter act preserved his inceptive title, if any he had, until his return: See act above quoted; Dig. 1861, p. 625.

But his inceptive title is denied. We are invited to regard this as a case between improvers, although it seems there is some reason to suppose that the possessions of both plaintiff and defendant are on unseated land. But laying this out of sight, how is the title between them as improvers?

[Burke *v.* Mock.]

The plaintiff acquired no inceptive title until he entered on the supposed vacancy, and began to improve, with the intent expressed in the act. That was probably in September 1860. Prior to that time, he had seen the lines on three sides of the land which he declared his intention to settle upon. Helzel showed him at two different times, once before harvest and once after, if I am not mistaken, where his lines came to, and told him he must not come further; and Mock said, "You are the first settler, and I don't want to interfere with you, or anybody else." What was said on the subject more than this was not detailed; but the witness says they talked awhile, plaintiff and Helzel; and they agreed that after Helzel made his survey, what he left Mock would take. Helzel made no intimation of receding from that boundary, nor Mock of going over it. At that time Mock had no boundary on that side of the tract but the Helzel line. That was where he said he would come to and no further. So it remained until the survey of Ketterman in 1864. While this was the state of the plaintiff's boundaries, and either before or after, most probably after, in the spring of 1861, Shoup entered as a settler outside of the plaintiff's designation, and commenced an improvement, and built and cleared as already stated; and continued to occupy until the time of his entering the service.

It must be borne in mind that entering as a settler, he might designate his boundaries or not, at the instant, but in either event he would be entitled to claim vacant land not exceeding 400 acres, if so much existed, in a reasonable shape, around and adjoining his improvements. If less, he would have to take less. When he began his settlement, be it in 1860 or 1861, he was not an intruder on the plaintiff's settlement right. The plaintiff's boundary was designated, if it was in 1861 that Shoup went on, and he did not then pretend to go beyond Helzel's line. Shoup was an intruder on Helzel, if any one, but nobody else. But Helzel afterwards withdrew all claim to the land in dispute, throwing out some 200 acres of his original claim. Shoup was the first, and continued to be the occupier in law of it while in the military service. He was a settler, and had a settler's right to it. At most, the plaintiff had no more than an intention to claim it. But this would not do against an actual settler. Even if it had been ever so solemnly agreed between Helzel and the plaintiff, that the latter was to take the balance of the vacancy after the former should have run his lines, this would not extend his right beyond the circumscribed boundary by which he was holding it at the time. They could not bargain the property of the Commonwealth away in that manner; nor deprive others of rights under the laws of the Commonwealth. The plaintiff could only claim title by settlement-right extending over the ground at the time. That he had not, for Helzel's boundary cut him off; or by a warrant and survey,

[Burke *v.* Mock.]

and that he had no pretence to. We think, therefore, that the learned judge erred in not affirming both the defendant's points, which substantially presented the views above expressed.

We think there was no error in what the learned judge said on the subject of the estoppel claimed. Certainly the encouragement given Shoup by Mock, was important to be considered upon the question of the boundary claimed by the latter, but no more. The conveyance of Shoup to the defendant, transferred all his title, and the latter was, as the case appears before us, fully invested with his rights. There was no dispute as to this, however.

For the reasons given, the judgement of the court below must be reversed and a *venire de novo* awarded.